Bass Estate

*James Groninger*, for petitioner.

*Bernard S. Rubb*, for respondent.

*Elaine V. Preston*, guardian-trustee ad litem.

OPINION BY EUNICE ROSS, J., SEPTEMBER 23, 1981:

Before the court is the petition of Lorraine Friedlander to terminate the trust created under the will dated November 30, 1966, of Esther Friedlander Bass, who died June 20, 1980, a resident of Pittsburgh, Allegheny County, Pennsylvania, leaving to survive her as next of kin her daughter, the petitioner.

The will of Mrs. Bass, probated July 14, 1980, provides in article four as follows:

"All the rest, residue and remainder of my estate I give, devise and bequeath to my sister, Hilda Shire and Pittsburgh National Bank, Pittsburgh, Pennsylvania, as Trustees under the following trusts.

"I. Trusts

"A. My trustees shall hold the principal of the Trust Estate for the use and benefit of my daughter, Lorraine Friedlander, and shall pay to her or for her benefit, the net income, therefrom, together with so much of the principal thereof, as shall be necessary to provide her with the sum of Four Hundred . . . Dollars a month, for and during her lifetime. In addition, My Trustees shall be authorized to disburse to her, or for her benefit, so 'much of the principal of the Trust Estate as my Trustees, in their sole discretion, shall deem advisable from time to time for her health, maintenance and support."

Upon the life tenant's death the balance passes in equal shares to testatrix's siblings or, if deceased, to their living issue. The trust is spendthrift and does not limit the investment powers of the trustees to legal investments.

In the event Mrs. Shire were unable or unwilling to serve as co-trustee with Pittsburgh National Bank then decedent's brother, Benjamin Cooper, was designated to serve as co-trustee with the bank. Neither individual trustee was to be

390

required to post bond. The bank has renounced its right to be trustee.

The balance for distribution at the audit of the account of Lorraine Friedlander, administratrix (Pittsburgh National Bank, executor, renounced its right to administer) shows a balance for distribution of $53,795.21 which will be diminished $13,326 for advancements by petitioner and a further $6250 on account of pecuniary or property bequests to her. Thus, the net balance distributable to the trust will be about $34,219.21.

Petitioner asserts that trust corpus can only generate $2000 a year income, that principal will be invaded continuously to produce $400 a month and will be exhausted within eight to twelve years, that she has only a modest income from other sources and would request additional moneys from principal for her health, maintenance and support, thereby accelerating exhaustion. She contends decedent's estate was larger when the will was executed in 1966 and $400 a month at that time had a purchasing power of $800 to $1000 of today's inflated money.

The surviving trustee, Hilda Shire, opposes termination, asserts that $5000 a year could be earned from the trust annually and that the life tenant, a college graduate, is capable of earning more than her current income.

The court appointed Elaine V. Preston, Esq., as guardian-trustee ad litem for minor interests and interests *in posse*. After hearing held August 26, 1981, the guardian filed her report finding the settlor's original purpose in creating the trust could be carried out and was not impracticable of fulfillment and that termination should not be granted.

The court's findings of fact and conclusions of law accord with those of the guardian-trustee ad litem.

Under the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, §2, 20 Pa. C.S.A. 6102(a) the court "regardless of any spendthrift . . . provision . . ., in its discretion ·may terminate such trust in whole or in part; or may make an allowance from principal to . . . issue . . . who is an income beneficiary, provided the court after hearing is satisfied that the original purpose of the conveyor cannot be carried out or is impracticable of fulfillment and that the termination . . .

more nearly approximates the intention of the conveyor . . ."

The issues then are whether the conveyor's original purpose cannot be carried out, whether it is impracticable of fulfillment and whether termination approximates the settlor's intent, *i.e.*, the payment of $400 a month to the life tenant out of income or principal along with principal distributions to the beneficiary for health, maintenance and support.

It is clear that $34,219 may be invested in Federally protected securities such as Treasury bills or money market certificates that will at the present time produce at least $4800 per year in today's market so that the size of the trust corpus does not require that corpus be invaded merely because of its insufficiency to produce adequate income.

The life tenant is 49 years of age, in moderately good health but being treated for allergies and other minor medical problems on a regular basis. Although an unmarried college graduate with some post-graduate schooling, she has since college worked at a series of unrewarding jobs of an unskilled clerical and recruiting nature which have paid her much less than her education would warrant. In the past year she earned $3500 for part-time work aiding two charities in fund raising and supplemented her income the balance of the year (two months) with unemployment compensation amounting to $45 per week. She has $1000 in her checking account, $4000 to $5000 in her savings account. She testified to regular monthly expenses of $950.

Her savings plus the $18,326 she will receive outright from the decedent's estate for her legacy and reimbursement could be invested to produce additional income of at least $1115 a year at 5% and at the 15% more or less rate of Treasury bills or money market certificates she could earn $3000 a year on $20,000 along with income at a lesser rate on the balance over $20,000.

Thus, with her earnings, earned and unearned, and unemployment benefits she has a potential $7000 individual income (or $583 per month). The trust now from principal alone can generate from securities paying 15% interest at least $5000 per year, enough to pay petitioner $400 a month, bring-

ing her total income up to $983 or $33 more than her monthly needs.

The settlor was aware in 1966 of her daugher's earnings record, of her need for income supplementation and the size of her own estate. Her daughter's need has not changed during the intervening years nor has the need changed for an emergency fund to draw on in the event of illness or other catastrophe.

A trust will not be terminated if there is no failure of the settlor's original purpose nor impracticability of fulfillment especially in the absence of substantial impairment of trust principal making it insufficient to maintain the life tenant: See the prestatutory cases of *Bosler Est.*, 378 Pa. 333, 336, 338, and *Schweizer Est.*, 1 FIDUC. REP. 350, 359.

. The beneficiary testified to some estrangement between her and the sole remaining trustee, Hilda Shire, her 79 year old aunt. This estrangement has nothing to do with failure of the settlor's purpose or impracticability of fulfillment of the trust. It might have to do with whether Hilda Shire ought to serve alone or with another corporate or individual co-trustee. Hilda Shire might renounce in favor of a trustee in whom the beneficiary reposes more confidence although, since she has not undertaken her duties, there is nothing on the record to impel the court to find she ought not to serve. The settlor had confidence in her.

Nor do the costs of trust administration, the life tenant's intelligence, the fact that she might manage the trust better herself nor the fact she is decedent's only child make the trust failed as to purpose or impracticable of fulfillment. Settlor put her confidence in one other than her child.

The court finds that termination would not more nearly approximate the settlor's intent, refuses termination and directs the beneficiary and the surviving individual trustee to suggest to the court within twenty days a substitute co-trustee, corporate or individual, to serve with Hilda Shire, original trustee, in administering this trust.